UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| THE SCOWCROFT GROUP, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 09-1107 (RMC) |
| ) | |
| TOREADOR RESOURCES CORP., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

The Scowcroft Group, Inc., a Maryland corporation with its principal place of business in Washington, D.C., brings this action against Toreador Resources Corp., a Delaware corporation with its principal place of business in Dallas, Texas.[1] Plaintiff alleges that it entered into a contract for services with Defendant on December 7, 2007, and that Defendant breached that contract by failing to pay the agreed upon fees upon completion of the services. On June 17, 2009, Plaintiff filed this action against Defendant, seeking relief on theories of breach of contract, unjust enrichment or quantum meruit, and fraud. Defendant moves to dismiss.

**I. FACTS**

Plaintiff alleges that in September 2007 it entered into a Retainer and Consulting Agreement with Defendant, pursuant to which Plaintiff would assist and advise Defendant in its business operations in Turkey, Hungary, and Romania. *See* Compl. [Dkt. # 1] ¶ 8. At that time, Defendant held a partial ownership interest in an offshore natural gas concession called the South

---

[1] The Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332.

Akcakoca Sub-Basin project and associated licenses (collectively, "SASB"). *Id.* ¶ 9. Defendant was in contact with Petrol Ofisi, a private Turkish oil company, about the possibility of Petrol Ofisi purchasing SASB. *Id.* ¶ 10. Petrol Ofisi is 50% owned by the Dogan Group ("Dogan"), a Turkish company. *Id.* ¶ 9.

In November 2007, Defendant asked Plaintiff to "assist in facilitating the sale of SASB by identifying Turkish companies that might be interested in purchasing SASB and make [sic] the necessary introductions." *Id.* ¶ 11. Plaintiff alleges that on December 7, 2007, the parties entered into a contract (the "Contract") whereby Defendant would pay Plaintiff "a success fee of 1.5% of the value of each transaction" completed as a result of Plaintiff's introductions and assistance. *Id.* ¶ 13; Def.'s Mot. to Dismiss ("Def.'s Mot.") [Dkt. # 7], Ex. 1 (Dec. 7, 2007 Contract). The Contract provided that Defendant would not pay a success fee on any investment in SASB by Petrol Ofisi, either alone or with Dogan, but Defendant would pay a success fee on an investment by Dogan, either alone or in conjunction with Petrol Ofisi. *See* Compl. ¶¶ 12, 14; Def.'s Mot., Ex. 1.

Plaintiff alleges that it performed work beyond the scope of the Contract's terms, including "structuring the sale of SASB to Petrol Ofisi (the 'SASB Transaction')," "obtaining necessary Turkish government approvals for the SASB Transaction," and "ensuring the Turkish Ministry of Energy's endorsement of the SASB Transaction and the rapid governmental approval of the SASB Transaction." Compl. ¶ 15. Plaintiff also alleges that in October 2008, due to this additional work and the fact that Defendant requested further assistance with respect to the SASB Transaction, Plaintiff proposed that Defendant pay Plaintiff the 1.5% success fee on the full proceeds of the SASB Transaction which, as defined by Plaintiffs, consisted of the sale of SASB to Petrol

Ofisi. *See id.* ¶¶ 15, 16.

According to Plaintiff, on November 6, 2008, Defendant "agreed to pay the full 1.5% success fee upon the closure of the SASB Transaction." Id. ¶ 17. Defendant allegedly made this representation twice more, in writing – once on December 15, 2008, and once on January 22, 2009. *Id.* ¶¶ 18 & 20. Plaintiff alleges that it relied on these representations from Defendant and, as a result, continued to provide services to Defendant under the Contract, including "convincing the Dogan management to close the deal." *Id.* ¶¶ 17-20.

The SASB Transaction closed on March 9, 2008, for $55 million. *See id.* ¶ 21. As a result, Plaintiff alleges, Defendant owes Plaintiff $825,000. *Id.* Plaintiff requested partial payment from Defendant on March 9, 2008, and April 9, 2009. *Id.* ¶¶ 22-23. Plaintiff alleges that on May 11, 2009, Defendant refused to pay Plaintiff for services performed under the Contract. *Id.* ¶ 24. This lawsuit followed.

Plaintiff alleges claims based on theories of breach of contract, unjust enrichment, and fraud. *See id.* Counts I, II, and III. Defendant moves to dismiss, arguing 1) that by the express terms of the Contract, Plaintiff is not entitled to any fee; 2) that Plaintiff cannot state a claim for unjust enrichment where there is an express contract between the parties, and; 3) that Plaintiff failed to state its claim for fraud with particularity. *See generally* Def.'s Mot. For the reasons set forth below, Defendant's motion will be denied.

## II. LEGAL STANDARDS

### A. Rule 12(b)(6)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated a claim.

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  A complaint must be sufficient "to give a defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Although a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*  The facts alleged "must be enough to raise a right to relief above the speculative level." *Id*.  Rule 8(a) requires an actual showing and not just a blanket assertion of a right to relief.  *Id.* at 555 n.3.  "[A] complaint needs *some* information about the circumstances giving rise to the claims." *Aktieselskabet Af 21. Nov. 2001 v. Fame Jeans, Inc.*, 525 F.3d 8, 16 n.4 (D.C. Cir. 2008) (emphasis in original).

In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face." *Twombly*, 550 U.S. at 570.  When a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, then the claim has facial plausibility. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

A court must treat the complaint's factual allegations as true, "even if doubtful in

fact." *Twombly*, 550 U.S. at 555. But a court need not accept as true legal conclusions set forth in a complaint. *Iqbal*, 129 S. Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 1950.

### B. Rule 9(b)

While Federal Rule of Civil Procedure 8 requires that every complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a), Rule 9(b) provides a heightened pleading standard for a party alleging fraud or mistake; it requires any such party to "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The Court of Appeals for the District of Columbia Circuit has noted that these rules are not contrary to one another, but should be considered jointly. *See United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004).

> [T]his means that the pleader must state the time, place and content of the false misrepresentations, the fact misrepresented and what was obtained or given up as a consequence of the fraud. The rule serves to discourage the initiation of suits brought solely for their nuisance value, and safeguards potential defendants from frivolous accusations of moral turpitude. . . . And because "fraud" encompasses a wide variety of activities, the requirements of Rule 9(b) guarantee all defendants sufficient information to allow for preparation of a response.

*United States ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1385 (D.C. Cir. 1981) (internal quotation marks and citations omitted). A plaintiff must specifically "identify the individuals allegedly

involved in the fraud." *Williams v. Martin-Baker Aircraft Co.*, 389 F.3d at 1256. Additionally, while Rule 9 allows "[m]alice, intent, knowledge, and other conditions of a person's mind [to] be alleged generally," "'generally' is a relative term. In the context of Rule 9, it is to be compared to the particularity requirement applicable to fraud or mistake. Rule 9 merely excuses a party from pleading discriminatory intent under an elevated pleading standard." *Iqbal*, 129 S. Ct. at 1954.

### III. ANALYSIS

#### A. Count I – Breach of Contract

Plaintiff alleges that, pursuant to the Contract, Defendant is obligated to pay it a 1.5% "success fee on any investment made by the Dogan Group, either alone or jointly with Petrol Ofisi," Compl. ¶ 14, and that Defendant has breached the Contract. *Id.* ¶ 27. In full, however, the relevant provision of the agreement states:

> We understand that Toreador has already had indirect contact with Petrol Ofisi, in which the Dogan group is a significant shareholder, and that Toreador would not expect to have to pay a success fee if Petrol Ofisi is an investor, either alone or jointly with the Dogan Group. However, Toreador would pay The Scowcroft Group a success fee on any investment made by the Dogan Group, either alone or jointly with Petrol Ofisi.

Def.'s Mot., Ex. 1.[2] Plaintiff acknowledges that it agreed to these terms. *See* Compl. ¶ 12. Thus, Defendant argues that Plaintiff is not entitled to a success fee under the explicit terms of the contract because the transaction with which Plaintiff assisted was "the sale of SASB to Petrol Ofisi," not the

---

[2] The Court may consider documents "incorporated by reference in the complaint" or "upon which the plaintiff's complaint necessarily relies even if the document is not produced by the plaintiff in the complaint but by the defendant in a motion to dismiss." *See Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009) (citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) and *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991)) (internal citations and quotation marks omitted).

Dogan Group. *See* Def.'s Mot. at 7; Compl. ¶¶ 15 (defining the "SASB Transaction" as "the sale of SASB to Petrol Ofisi") & 21 (alleging that Defendant completed the SASB Transaction as a result of Plaintiff's service).

The Court finds that the Contract is ambiguously worded – the two sentences relevant to this claim appear to at least partially contradict one another. In deciding a Rule 12(b)(6) motion to dismiss, the Court must take all allegations contained in the Complaint as true to determine if they state a "plausible" claim for relief. *See Twombly*, 550 U.S. at 555, 570. Despite the fact that Plaintiff itself defined the transaction that underlies this lawsuit as a sale "to Petrol Ofisi," it is not entirely clear that Dogan Group was not an investor. For example, Plaintiff alleges that it "took on the critical role of convincing the Dogan management to close the deal and, due to the Scowcroft Group's diligence and action, Dogan agreed to continue with the SASB Transaction." Compl. ¶ 19. Furthermore, both parties acknowledge that the Dogan Group holds a substantial ownership interest in Petrol Ofisi. *See id*. ¶ 9 ("Petrol Ofisi, a private Turkish oil company, was and is 50% owned by the Dogan Group[.]"); Def.'s Mot., Ex. 1 ("[T]he Dogan Group is a significant shareholder [in Petrol Ofisi]."). Giving Plaintiff the benefit of the doubt and accepting its allegations as true, the Court cannot find at this stage that Plaintiff has failed to state a claim for breach of contract.[3]

---

[3] In its Opposition to Defendant's Motion to Dismiss, Plaintiff argues that the parties modified the terms of the Contract and that it is on this basis that Plaintiff is entitled to the 1.5% success fee. In the Complaint, however, although Plaintiff alleges that on two separate occasions Defendant represented unequivocally and in writing that it would pay Plaintiff "the full 1.5% success fee upon the closure of the SASB Transaction," Compl. ¶¶ 18 & 20, Plaintiff never suggests that these representations served to modify the Contract, which it explicitly defines as the December 7, 2007 agreement. *See* Compl. ¶ 13. At this stage, the allegations in the Complaint control and the Court will not consider a theory Plaintiff has not alleged therein.

### B.  Count II - Unjust Enrichment/Quantum Meruit

Under District of Columbia law, "there can be no claim for unjust enrichment when an express contract exists between the parties." *Schiff v. Am. Ass'n of Retired Persons*, 697 A.2d 1193, 1194 (D.C. 1997); *see also Albrecht v. Comm. on Employee Benefits of the Fed. Reserve Employee Benefits Sys.*, 357 F.3d 62, 69 (D.C. Cir. 2004) (finding that there can be no claim for unjust enrichment when the claim relies on the terms of an express contract between the parties). Under the Federal Rules of Civil Procedure, however, a plaintiff may plead alternative theories of recovery. *See* Fed. R. Civ. P. 8(d).  Courts in this District have found that a plaintiff should be permitted to plead both breach of contract and unjust enrichment.  *See McWilliams Ballard, Inc. v. Broadway Mgmt. Co.*, 636 F. Supp. 2d 1, 21 n.10 (D.D.C. 2009) (finding that while "plaintiff ultimately cannot recover under both a breach of contract claim and an unjust enrichment claim pertaining to the subject matter of that contract . . . at [the pleadings stage], plaintiff's unjust enrichment claim is an alternate theory of liability which it may pursue"); *Nevius v. Afr. Inland Mission Int'l*, 511 F. Supp. 2d 114, 122 n.6 (D.D.C. 2007) (finding that, in light of Federal Rule of Civil Procedure 8(d), "[t]he court is not persuaded . . . that [Plaintiff] cannot allege an express contract while asserting a claim for unjust enrichment, a remedy designed for the absence of a contract").  Such a conclusion is in the interest of justice — to find that a plaintiff may not plead unjust enrichment where he or she also has alleged a breach of contract could leave that plaintiff without any remedy should the fact-finder determine at a later stage that there was no express agreement between the parties.  *See* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

### C. Count III – Fraud

Finally, Defendant argues that Plaintiff has not plead its claim of fraud with the particularity required by Federal Rule 9(b). "To plead fraud with particularity, the plaintiff[] must specify the circumstances constituting the defendant's allegedly fraudulent behavior. At common law, the requisite elements of fraud are (1) a false representation; (2) made in reference to a material fact; (3) with knowledge of its falsity; (4) with the intent to deceive; and (5) an action that is taken in reliance upon the representation." *Antoine v. U.S. Bank Nat'l Ass'n*, 547 F. Supp. 2d 30, 37 (D.D.C. 2008) (internal citations and quotation marks omitted); *Higgs v. Higgs*, 472 A.2d 875, 876 (D.C. 1984) (setting forth the "essential elements of fraud").

Plaintiff alleges that on November 6, 2008, December 15, 2008, and January 22, 2009, Defendant explicitly agreed to pay Plaintiff the 1.5% success fee upon the closure of the SASB Transaction, and that based on these representations from Defendant, Plaintiff continued to provide services for Defendant. *See* Compl. ¶¶ 17, 18, & 20. Plaintiff also alleges that Defendant knew that its statements were false and made those statements with the intent to deceive. *See id.* ¶¶ 37-38 and 40-41. Rule 9 allows a plaintiff to plead elements relating to a defendant's state of mind generally. *See* Fed. R. Civ. P. 9(b). Furthermore, although Plaintiff did not specify which individual employed by or representing Defendant perpetrated the alleged fraud, it specifies the dates and nature of two of Defendant's misrepresentations – by letter dated December 15, 2008, and by email dated January 22, 2009. These documents can be incorporated into the Complaint by reference, *see Hinton*, 624 F. Supp. at 46, and are sufficient to put Defendant on notice of which individuals made the allegedly false statements.

## IV.  CONCLUSION

Accordingly, Defendant's motion to dismiss [Dkt. # 7] will be denied.  A memorializing order accompanies this memorandum opinion.


Date:  October 26, 2009                                  /s/
ROSEMARY M. COLLYER
United States District Judge